**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Karina Salazar Chamlati,** | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| **Trans Union, LLC,** | : | |
| **Defendant.** | : | |

# COMPLAINT AND JURY DEMAND

## Preliminary Statement

1. This is an action for damages brought by an individual consumer against the Defendant (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

2. Plaintiff Karina Salazar Chamlati ("Ms. Salazar Chamlati" or "Plaintiff") is a victim of identity theft. Someone used her name to open an electricity account with Fulcrum Amigo Energy LLC d/b/a Amigo Energy ("Amigo") for service at an address in San Juan, Texas, hundreds of miles from her home in Dallas, Texas. Ms. Salazar Chamlati has never had an account with Amigo, has never lived at or had any connection to the San Juan address, and, during the period in which the Amigo charges were incurred, received her electric service from Gexa Energy ("Gexa").

3. LVNV Funding, LLC ("LVNV"), a debt buyer, acquired the fraudulent Amigo debt and began furnishing it to Defendant Trans Union, LLC ("Trans Union"), which began reporting it on Ms. Salazar Chamlati's credit report as a collection account with a balance of approximately $476. By letter dated July 24, 2026, Ms. Salazar Chamlati sent Trans Union a detailed written

dispute by certified mail, identifying the LVNV account as fraudulent and asking that it be blocked and deleted. Included with her dispute were: her driver's license; her Social Security card; a letter from Gexa confirming that she has been a Gexa customer since July 30, 2021; the Amigo billing statement showing that the charges were incurred in 2022 for service at the San Juan address; and her sworn Federal Trade Commission Identity Theft Report (the "FTC Report").

4. Trans Union refused to block the account. By letter dated September 1, 2026, Trans Union claimed that the document Ms. Salazar Chamlati submitted "does not appear to be a copy of an official, valid identity theft report" – even though she had submitted exactly that: an FTC Identity Theft Report, which Trans Union's own letter lists as an acceptable document. Trans Union also did not conduct an investigation, did not provide Ms. Salazar Chamlati with the results of any investigation, and continued to report the fraudulent LVNV account.

## **Jurisdiction and Venue**

5. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

6. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## **Parties**

7. Plaintiff is an adult individual who resides in Dallas, TX.

8. Defendant Trans Union is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022. At times Trans Union is referred to as the "Credit Reporting Agency Defendant" or the "CRA Defendant".

## Facts

## Purpose of the FCRA

9. Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA. One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

10. The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

11. Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or

delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

12. The FCRA also provides specific protections for victims of identity theft. Under Section 1681c-2, within four (4) business days of receiving (1) appropriate proof of the consumer's identity, (2) a copy of an identity theft report, (3) the identification of the information the consumer alleges resulted from identity theft, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer, a CRA must block the reporting of that information in the consumer's file and promptly notify the furnisher that the information may be the result of identity theft and that a block has been requested. 15 U.S.C. § 1681c-2(a), (b).

13. A CRA may decline or rescind a block only in narrow circumstances: where the block was requested in error or on the basis of a material misrepresentation of fact by the consumer, or where the consumer obtained possession of goods, services, money, or credit as a result of the blocked transaction. 15 U.S.C. § 1681c-2(c). An "identity theft report" includes a report filed with the Federal Trade Commission, and Trans Union's own form correspondence acknowledges that "[a]n electronic Identity Theft Report filed online with the FTC at www.identitytheft.gov" is an acceptable identity theft report. See 15 U.S.C. § 1681a(q)(4); 12 C.F.R. § 1022.3(i).

14. Here, despite Ms. Salazar Chamlati's detailed and well-documented dispute, Defendant Trans Union refused to conduct a reasonable investigation of the inaccurate reporting of Plaintiff's credit information, and refused to block the fraudulent information. Trans Union continued to report derogatory, inaccurate information about her in violation of multiple provisions of the FCRA.

**An Identity Thief Opened an Amigo Energy Account in Ms. Salazar Chamlati's Name**

15. Since July 30, 2021, Ms. Salazar Chamlati has received electric service at her Dallas residence from Gexa.

16. Ms. Salazar Chamlati has never had an account with Amigo and has never requested, authorized, or received any services from Amigo.

17. Nevertheless, an account was opened with Amigo in the name "Karina Salazar" (Amigo account number ending in 0173) (the "Amigo Account") for electric service at 700 W. Business Highway 83, Unit 106, San Juan, Texas 78589 – a location in the Rio Grande Valley, hundreds of miles from Ms. Salazar Chamlati's home in Dallas. The Amigo Account was opened without her knowledge or consent.

18. Ms. Salazar Chamlati has never lived at the San Juan address, has never had any connection to it, and does not know anyone who lives there. Amigo's July 13, 2022, final bill for the Amigo Account reflects charges for a billing period of June 30, 2022, through July 9, 2022, including a $175.00 early termination penalty, for a total balance of $476.62 – a period during which Ms. Salazar Chamlati was, and had been for nearly a year, a Gexa customer in Dallas.

**Defendant Trans Union Reported the Fraudulent Amigo Account as a Collection Account on Ms. Salazar Chamlati's Credit Report**

19. Thereafter, LVNV acquired the fraudulent Amigo Account and began furnishing it to Trans Union, and Trans Union began reporting, an LVNV collection account on Ms. Salazar Chamlati's Trans Union credit report (the "LVNV Account") showing a balance of approximately $476, all of it past due.

20. The LVNV Account is inaccurate. It reports a debt that Ms. Salazar Chamlati does not owe, for services she never requested or received, at an address where she has never lived, arising from an account that was fraudulently opened in her name.

21. Ms. Salazar Chamlati discovered the LVNV Account on her credit report in or about January 2026.

22. This is not the first time Trans Union has reported a Texas energy-company collection account belonging to someone else on Ms. Salazar Chamlati's credit report. In 2024, Ms. Salazar Chamlati sued Trans Union in this Court for reporting a Transworld Systems Inc. collection account, with original creditor Xoom Energy Texas, LLC, that belonged to a "Karime Salazar" at an address in Weslaco, Texas – a short distance from San Juan, Texas. See Salazar Chamlati v. Experian Information Solutions, Inc., et al., No. 2:24-cv-04082 (E.D. Pa.). Trans Union was thus on specific notice that energy-company collection accounts originating in the Rio Grande Valley and bearing a similar name were being wrongly associated with Ms. Salazar Chamlati's credit file.

23. On July 17, 2026, Ms. Salazar Chamlati filed an Identity Theft Report with the Federal Trade Commission, declaring under penalty of perjury that the Amigo Account was opened fraudulently, that she has never had an account with Amigo, that the services were provided to an address at which she has never resided, and that the LVNV Account is the result of fraud and identity theft.

24. Nevertheless, Trans Union continued to report the LVNV Account as a collection account with a balance.

25. By letter dated July 24, 2026, Ms. Salazar Chamlati disputed the LVNV Account with Trans Union in writing and requested that it be blocked and deleted under the FCRA's identity theft provisions. Trans Union refused to block the account, did not conduct a reasonable reinvestigation, and continued to report it.

**<u>Ms. Salazar Chamlati's Dispute and Block Request to Trans Union</u>**

26. By letter dated July 24, 2026, sent by certified mail, Ms. Salazar Chamlati disputed the LVNV Account with Trans Union (the "Dispute"). The Dispute identified the LVNV Account by creditor name and account number; provided her full name, current address, Social Security number, and date of birth; stated that she has never had an account with Amigo and that the account was opened fraudulently; and asked Trans Union to block and delete the LVNV Account from her credit report.

27. The Dispute explained that the charges underlying the LVNV Account were incurred in 2022, when Gexa was Ms. Salazar Chamlati's electric provider, and that the Amigo billing statement reflected service at a San Juan, Texas address where she has never lived.

28. Enclosed with the Dispute were: (1) a copy of her driver's license; (2) a copy of her Social Security card; (3) a May 22, 2026, Letter from Gexa confirming that she has been a Gexa customer at her Dallas address since July 30, 2021 (the "Gexa Letter"); (4) the July 13, 2022, Amigo billing statement for the San Juan address (the "Amigo Statement"); and (5) her FTC Report.

29. The Dispute therefore supplied Trans Union with everything Section 1681c-2 requires for a block: proof of her identity, a copy of an identity theft report, identification of the specific information that resulted from identity theft, and her statement that the information did not relate to any transaction by her.

30. Trans Union received the Dispute and, by letter dated September 1, 2026, declined to block the LVNV Account. Trans Union's letter stated that Trans Union was "unable to block the information you have identified because the document submitted does not appear to be a copy of an official, valid identity theft report."

31. That statement was false. Ms. Salazar Chamlati had submitted an official FTC Identity Theft Report, signed under penalty of perjury and bearing an FTC report number. Trans Union's own September 1, 2026, letter lists, as an example of an acceptable document, "[a]n electronic Identity Theft Report filed online with the FTC at www.identitytheft.gov" – precisely what she had provided.

32. None of the narrow grounds on which a CRA may decline a block under Section 1681c-2(c) applied. Ms. Salazar Chamlati did not request the block in error or on the basis of any misrepresentation, and she never obtained any goods, services, money, or credit as a result of the Amigo Account.

33. Trans Union's only stated reason for not blocking the fraudulent information was the false assertion that the FTC Identity Theft Report "does not appear to be a copy of an official, valid identity theft report."

34. The Dispute was also a dispute of the completeness and accuracy of the LVNV Account under Section 1681i(a). Trans Union was therefore required, within thirty (30) days, to conduct a reasonable reinvestigation, to notify LVNV of the Dispute and provide it with all relevant information Ms. Salazar Chamlati submitted, and to provide her with written results of the investigation. Upon information and belief, Trans Union did none of these things. Trans Union never provided Ms. Salazar Chamlati with any investigation results, and continued to report the LVNV Account. Since no investigative results were ever provided, upon information and belief, Trans Union also failed to notify LVNV of the Dispute at all, in violation of Section 1681i(a)(2).

35. Upon information and belief, Trans Union also failed to promptly notify LVNV that the LVNV Account may be the result of identity theft and that a block had been requested, as Section 1681c-2(b) requires.

36. Ms. Salazar Chamlati takes significant pride in her credit, and was distraught, confused and upset by Defendant's failure to block and remove the fraudulent LVNV Account despite the extensive documentation she submitted – and by Trans Union's refusal to accept the very FTC Identity Theft Report that its own letter identifies as acceptable.

**<u>The Fraudulent LVNV Account Continues to Damage Ms. Salazar Chamlati</u>**

37. The LVNV Account continues to appear on Ms. Salazar Chamlati's Trans Union credit report as a collection account with a balance.

38. The LVNV Account has lowered Ms. Salazar Chamlati's credit scores and falsely portrays her, to anyone who views her Trans Union credit report, as a consumer who defaulted on a utility bill and left a collection account unpaid.

39. Ms. Salazar Chamlati has been forced to spend substantial time and effort attempting to clear her name, including obtaining documentation from Gexa, locating the Amigo Statement, preparing and filing the FTC Report, and preparing and sending the Dispute by certified mail – only to have Trans Union reject it on a pretext.

40. Trans Union did not need to look beyond the documents in front of it: the FTC Report was exactly the type of identity theft report that Trans Union's own form letter identifies as acceptable, and the Gexa Letter and Amigo Statement showed, on their face, that the account was for service at an address hundreds of miles from where Ms. Salazar Chamlati lived and received her electricity. Trans Union nonetheless rejected the block request on the stated ground that no valid identity theft report had been submitted.

41. If any reasonable investigation were conducted, and the materials submitted by Ms. Salazar Chamlati were read, the LVNV Account should have been blocked and deleted.

42. Defendant either did not engage in any investigation when it was informed of the

inaccurate reporting, as such an investigation would have revealed the inaccurate information, which, at minimum, was misleading since Ms. Salazar Chamlati provided documentation confirming that the Amigo Account was not hers.

43. Defendant failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

44. Defendant knew or should have known that its actions violated the FCRA. Additionally, Defendant could have taken the steps necessary to bring its agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

45. Plaintiff's credit reports and file have been obtained from the CRA Defendant and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

46. As a result of Defendant's violations of the law, Ms. Salazar Chamlati suffered credit score reduction, loss of credit opportunity, interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to her dispute and disbelief by Defendant of her assertions.

**Count One – Violations of the FCRA**
**Plaintiff v. Trans Union**

47. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

48. At all times pertinent hereto, Trans Union is a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

49. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

50. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

51. The CRA Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Sections 1681c-2, 1681e(b) and 1681i(a) of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

52. Among other things, Trans Union violated Section 1681c-2 by refusing to block the LVNV Account within four (4) business days of receiving Ms. Salazar Chamlati's proof of identity, her FTC Report, her identification of the fraudulent information, and her statement that the information did not relate to any transaction by her, and by declining the block on a ground the statute does not permit; and violated Section 1681i(a) by failing to conduct an investigation of her Dispute, failing to review and consider all relevant information she submitted, failing to provide LVNV with all relevant information, and failing to provide her with the results of any reinvestigation.

53. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY TRIAL DEMAND

54. Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Costs and reasonable attorneys' fees; and

e. Such other relief as may be necessary, just and proper.

**THE KIM LAW FIRM, LLC**

BY: *[/s/ Richard H. Kim]* ___________
Richard Kim, Esquire
1515 Market St., Suite 1200
Philadelphia, PA 19102
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com

*Attorney for Plaintiff Karina Salazar Chamlati*

Date: October 12, 2026